SMATHERS ET AL. *v.* WESTERN CAROLINA BANK ET AL.

(Filed 24 May, 1911.)

1. **Banks — Shareholders — Individual Liability — Interpretation of Statutes—Contracts.**

   The provisions of chapter 298, Public Laws 1897, that stockholders in a bank "shall be held individually responsible . . . for all contracts, debts and agreements" thereof "to the extent of the amounts of the stock therein at the par value thereof in addition to the amount vested in such share," creates an additional liability upon the stockholders as a matter of statute, and not by contract.

2. **Same—Married Women.**

   Revisal, sec. 2094, restricting the executory contractual rights of married women, does not relieve her property from the liability imposed by the Public Laws of 1907, chap. 298, upon the stockholders of the bank, when she owns such stock in her own name and right, the liability under the Laws of 1907 being statutory and for the benefit of the bank's creditors and not arising by contract.

3. **Same—Trusts and Trustees.**

   Under the express provisions of Public Laws 1893, chap. 471, funds in the hands of a trustee, and not the trustee, shall be liable when he holds bank stock for the *cestui que trust,* and when a certificate of bank stock was issued to the husband as trustee for his wife, and was so held up to the time of insolvency of the bank, without evidence tending to show that she was not the beneficial owner, the husband, as trustee, cannot be adjudged individually liable. Laws 1907, chap. 298.

4. **Husband and Wife—Banks—Shareholders—Trusts and Trustees —"Proxy"—Evidence—Fraud.**

   Certificates of bank stock, upon their face, appeared to be issued to a husband as trustee for his wife. The husband was the president of the bank, and it became insolvent. *Held,* the mere fact that the husband had acted in stockholders' meetings as his wife's proxy is no evidence of fraud, and will not, of itself, rebut the beneficial ownership being in the wife, when it appears upon the face of the certificate, so as to hold him liable under the statute. Laws 1907, chap. 298.

APPEAL from *Councill, J.,* at the Fall Term, 1910, of BUN-COMBE.

*Charles E. Jones* for W. W. *Jones.*

*J. H. Merrimon, T. F. Davidson and Bourne, Parker & Morrison* for Mrs. *Lauretta Maddux.*

CLARK, C. J. This action was begun against the Western Carolina Bank, which was chartered by the State, for a receiver, and to wind up the affairs of the bank, which had become insolvent. The present plaintiff, receiver of the bank, appealed from so much of the judgment as adjudged that Lauretta Maddux and L. P. McLoud were not liable to the creditors for double the amount of their stock, as provided by the statute (chapter 298, Public Laws 1897), by reason of the fact that they were married women. The administrator of Lewis Maddux appealed from the ruling of the court that his estate was responsible for the stock liability upon the shares which stood in his name as trustee.

### PLAINTIFF'S APPEAL.

Public Laws 1897, ch. 298, entitled "An act to regulate the liabilities of stockholders in banks chartered by the State," etc., provides: "Section 1. The stockholders of every bank or banking association now operating by virtue of any charter or law of North Carolina, or that may hereafter operate by virtue of any charter or law of North Carolina, shall be held individually responsible, equally and ratably and not for one another, for all contracts, debts and agreements of such association to the extent of the amounts of the stock therein at the par value thereof, in addition to the amount vested in such share." This statute was construed in *Smathers v. Bank,* 135 N. C., 410.

(1) The liability of stockholders is statutory, and attaches by virtue of the statute to the owners of the stock. There is no exemption as to married women. A married woman incurs liability by virtue of the statute as owner of the stock, and not by contract. The liability is imposed by statute for the benefit of depositors and creditors.

(2) Married women consequently are liable out of their individual estate just as they are for debts contracted for necessaries or for the support of the family, or to obtain money to pay ante-nuptial debts, as to which execution would be issued against

and collected out of her individual property as if she were a *feme sole.* Revisal 1905, sec. 2094. The provision of our statute of 1897 (chapter 298), above quoted, is copied *verbatim* from Rev. St. U. S., 5151 (U. S. Comp. St. 1901, p. 3465), originally National Banking Act 1864, sec. 12 (Act Cong., June 3, 1864, ch. 106; 13 Stat., 103), under which it was held that "a married woman who owns stock in a national bank is not exempt on account of coverture from the liability imposed upon all stockholders in such banks." *Anderson v. Line* (C. C.), 14 Fed., 405; *Witters v. Sowles* (C. C.), 32 Fed., 767. In the latter case the stock was owned by a married woman in Vermont, in which at that time the contract of a married woman was wholly void. The above cases and others hold that this liability is not contractual on the part of the stockholder, but is statutory and imposed for the benefit of creditors, and hence a married woman, when she becomes the owner of the stock, assumes the same liability as all other stockholders. *Scott v. Latimer,* 89 Fed., 843 (33 C. C. A., 1); *Aldrich v. Skinner* (C. C.), 98 Fed., 376. Even if the liability of the stockholder had been contractual, our Constitution contains no provision imposing any disability upon a married woman to contract. And the disability imposed, with certain exceptions, by statute (Revisal 1905, sec. 2094), would not apply to this case, where the statute imposes liability upon all owners of stock without excepting married women. The liability of the bank in creating the debt is contractual, but the liability of the stockholder is statutory. *Bernheimer v. Converse,* 206 U. S., 533; 27 Sup. Ct., 755; 51 L. Ed., 1163.

### DEFENDANT'S APPEAL.

(3) Certificate for $14,000 stock was issued to "Lewis Maddux, trustee for Lauretta Maddux, his wife." This stock was subscribed for by Lewis Maddux, but the certificate therefor was issued to Lewis Maddux, "trustee for Lauretta Maddux," and was so held up to the time of the insolvency of the bank. There is no evidence of fraud, and nothing to rebut the beneficial ownership thereof being in Lauretta Maddux, as appears upon the face of the certificate. It nowhere appears that she did not

receive the dividends, and that it was not in all respects her property. The mere fact that her husband voted the stock and was president of the bank is no evidence of fraud. Nothing would have been more natural and in the ordinary course of events than that as her proxy or as her agent he so voted it. Public Laws 1893, ch. 471, sec. 1, provides: "No person holding stock in any corporation in this State, as executor, administrator, guardian or trustee, and no person holding such stock as collateral security, shall be personally subject to any liability as a stockholder in such corporation (but the person pledging such stock shall be construed as holding the same and shall be liable as a stockholder accordingly), and the estate and funds in the hands of such executor, administrator, guardian or trustee shall be liable in like manner and to the same extent as the testator or intestate or the ward or the person interested in such fund would have been had he been living and competent to act and hold the stock in his own name." This act is conclusive as to the non-liability of the trustee, Lewis Maddux, for the stock liability upon the shares of which his wife was the beneficial owner. There being no evidence to rebut the ownership of the stock being in Mrs. Maddux, according to the tenor of the certificate, the holding of the court that Lewis Maddux was the owner, viewed as a finding of fact, is reviewable, and, considered as a conclusion of law, is erroneous. *Bank v. Cocke,* 127 N. C., 467, to which we were cited by counsel, does not conflict with what we have just said. In *Bank v. Cocke* the stockholders in a meeting assumed liability for $75,000, for which they agreed to become liable. The Court held that this was a contractual liability, for which the guardian became individually liable, and could not bind his wards, for he had no authority to create such debt for them or to charge their stock. But the liability which attaches to the ownership of the stock, which was held by him as a guardian, is statutory, and therefore would bind the estate of the wards in his hands. The Court in that opinion points out this very distinction in the nature of the two liabilities.

In both appeals the judgment below is

Reversed.